MINNEAPOLIS HARVESTER WORKS *vs.* S. H. SMITH and another.

May 10, 1883.

**Agency—Contract Construed.**—Certain provisions of a contract of agency for the sale of harvesters considered and construed.

**Pleading—Complaint in Tort—Recovery as upon Contract.**—Where a complaint states a cause of action *ex delicto,* no recovery can be had upon a cause of action *ex contractu* not embraced in such statement.

By written contract between the plaintiff of the first part, and defendants (partners as Smith & Culver) of the second part, the plaintiff appointed defendants its agents for the sale, in Olmsted county, of Dewey harvesters, and other machines made by plaintiff, agreeing to supply these articles in specified quantities and at designated prices, the defendants to sell at the regular retail prices established by plaintiff, on terms of credit provided in the contract. Among other stipulations on the part of the defendants, the contract contained the following articles:

"*Fifth*—Said party of the second part further agrees, in acting as such agent, to receive these machines and pay the freight and charges, keep them well housed, clean and bright, and well cared for until sold; and to sell them only to such persons as are of well-known responsibility and of good reputation for the payment of their debts, and owners of no less than 80 acres of land worth at least $1,000 clear of all incumbrances, and $600 worth of personal property over and above all debts and liabilities; and to require each person who signs the notes to furnish a statement thereon, showing the value of his or her assets over and above liabilities; and, upon a failure to do so, the party of the second part hereby agrees to indorse such note as follows: For value received (I or we) hereby guarantee the collection of the within note, and waive protest, demand and notice of non-payment thereof.

"*Sixth*—To take all notes on the blanks of said Minneapolis Harvester Works, * * * to turn over to said Minneapolis Harvester Works all such notes as fast as received, if so required. * * * Should any notes turned over to said Harvester Works without in-

dorsement prove uncollectible, then 23 per cent. of the amounts due may be charged back to, and will be paid by, said party of the second part.

"*Thirteenth*—The party of the second part agrees to be accountable to and reimburse the party of the first part and assigns for any loss or expenses resulting from any deviation from this agreement, and from the price-list and conditions and instructions hereunto attached, which are hereby made a part of this agreement, and for any attorney's fees, costs, or other expenses said party of the first part may be subject to by reason of such deviation, or incur in enforcing this contract, by reason of non-compliance, defalcation, or otherwise, on the part of the party of the second part."

The plaintiff brought this action in the district court for Olmsted county, the summons being in the form prescribed in actions on contract for the payment of money only. The complaint avers the making of this contract (a copy of which is annexed to and forms part of the complaint) and the receipt by defendants from plaintiff, and the sale by defendants in the season of 1878, of the number and kinds of machines therein stipulated.

The complaint further avers that among others the defendants sold and delivered to one John D. Farnham one of said machines,—viz., one Dewey Harvester, No. 564,—at the price of $185, and received from Farnham, in payment and settlement therefor, three notes and contracts, signed by him, copies of which are annexed to and form part of the complaint. These notes or contracts are in the usual form of "machine notes," two of them containing a promise to pay $60, and the third $65, with the usual provision as to retention of title and right of possession in plaintiff until payment in full, and also the following statement: "For the purpose of obtaining credit, I, John D. Farnham, do hereby certify that I own in my own name 120 acres of land in section 7, town of Racine, county of Mower, and state of Minnesota, of which 120 acres are improved, worth $4,000, which is not incumbered by mortgage or otherwise. I own $600 worth of personal property, over and above all indebtedness. P. O. High Forest, county of Olmsted, state of Minn.; residence two and one-half miles south-east of P. O."

The complaint states that on settlement of the business of selling for the year 1878, the defendants turned over these Farnham notes, among others; that they are all long past due and no part of them has been paid by Farnham, and "that nothing has ever been collected of, received from, paid or offered to be paid by said defendants, or charged to them upon said notes, or any part or portion thereof, under or by virtue of any of the provisions of said contract;" that Farnham refuses to pay any part of the notes; that he is insolvent, and collection or payment cannot be enforced against him by attachment, execution, or levy; that plaintiff has been diligent in its attempts to collect the notes as they became due, but has been unable to collect them, and they are wholly uncollectible on account of Farnham's insolvency. That Farnham, when the machine was sold and delivered to him, was not nor ever since has he been a person of well-known responsibility, or of good reputation for the payment of his debts, and was not the owner of 80 acres of land, or of any land whatever in his own name, and did not own $600 worth of personal property over and above his debts; but that he was a person of well-known irresponsibility and of bad reputation for the payment of his debts, all of which facts the defendants well knew at the time and since, and which plaintiff did not know till long after it received the notes from the defendants.

The complaint further states that the above-quoted statements as to Farnham's property are not true, "and were not made, authorized nor suggested by said John D. Farnham, but were made by defendants and inserted in said notes without the knowledge, consent or authority of said Farnham, and for the sole purpose of making said notes and contracts appear to conform to the conditions of said contract, and making said John D. Farnham appear to be a person of such responsibility and reputation as required to be by the terms of said contract, and for the purpose of misleading said plaintiff, and cheating and defrauding them out of the price of said machine for which the same were taken, by turning the same over to plaintiff in settlement therefor, instead of others which were in truth and in fact in all respects as required by said contract to be."

"That subsequently, and at the time of the settlement had between plaintiff and defendants, said defendants fraudulently turned over to plaintiff, in payment and settlement of machinery by defendants sold during the season of 1878, and more especially in payment of and settlement for said machine so sold said Farnham, the said notes and contracts aforesaid, then and there fraudulently representing to plaintiff, and then and there fraudulently permitting and allowing plaintiff to believe, that said notes and contracts were in all respects such as they purported upon their face to be, and that said John D. Farnham, the maker thereof, was such a person as required to be to whom they could sell machinery under the terms of said contract aforesaid."

The complaint then states that plaintiff, relying on these fraudulent representations, and believing the notes to be as represented and as required by the contract to be, and believing Farnham to be of the character and responsibility required by the contract and as represented in the statements and notes, took the notes from defendants in payment and settlement for the machine with others sold by defendants in the season of 1878, without any indorsement or guaranty thereon by the defendants. That the representations so made by defendants and relied on by plaintiff, were and were known by defendants to be, false and fraudulent, and defendants made them and allowed plaintiff to believe and rely on them, knowing them to be false, and for the purpose of cheating and defrauding plaintiff out of the money represented by the notes, and out of the price of the machine and plaintiff's interest and property therein, and of benefiting themselves; and "that because of the failure of said defendants to comply with the provisions and terms of said contract upon their part, and on account of and because of their deviation from said contract and agreement, and because of the said fraudulent representations so made by defendants as aforesaid, the said plaintiff has suffered damage in the sum of $185, and ten per cent. interest thereon from July 23, 1878," for which sum, with costs, judgment is demanded.

Defendants in their answer allege on information and belief that the statements in the notes were true when the sale was made and the notes taken; and that Farnham was then a person of well-known re-

sponsibility and of good reputation for the payment of his debts, etc. They aver that the statements in the notes were inserted by Farnham's direction before he signed, and that defendants believed them to be true when they sold the machine and took the notes, and when they turned the notes over to the plaintiff; that the notes were in all respects such as the defendants were required by the contract to take and turn over, and that they have in all respects complied with the contract. They admit that they never made any indorsement or guaranty on the notes, deny specifically the charge of fraud, put in issue the averments of Farnham's insolvency and that the notes cannot be collected from him, and allege laches on plaintiff's part in failure to proceed against him, etc. The reply puts in issue the averments of the answer.

A jury was waived, and the action tried before *Start*, J. The record contains no settled case, but it is stated in the opinion of the judge appended to the findings and decision, that at the beginning of the trial the defendants asked that plaintiff be required to elect whether its action should be treated as one for breach of contract, or as an action in tort for damages for fraud and false representations, and that the motion was denied for the reason that the complaint was not ambiguous, and the cause of action alleged was clearly *ex delicto*, the gist of it being the alleged fraud. Upon the evidence the court found that when the machine was sold and the notes taken, Farnham was not a person of well-known responsibility, and had not a good reputation for the payment of his debts, did not own 80 acres of land, and did not own $600 of personal property over and above his debts, but was and has ever since been wholly insolvent; that he then resided at Racine, in Mower county, 18 miles from Rochester, where the machine was sold; that all his personal property was mortgaged to its full value, the mortgages being on file in the town where he resided; that in Olmsted county there were unpaid judgments docketed against him, and that reasonable inquiry and an examination of the records in the two counties would have disclosed the falsity of his property statements and his true financial standing. That defendants sold the machine, took the notes, and turned them over to plaintiff, in good faith, believing Farnham's property state-

ment, and relying on it as true, with no knowledge of any mortgages or judgments against him, and with no intent to defraud plaintiff; but they made no examination of the records, nor any inquiry except of Farnham himself, who was a stranger to them, they having no personal acquaintance with him, nor any knowledge of his reputation for the payment of his debts. That when defendants turned over the notes to plaintiff, they made no representations concerning them, nor have they ever done or concealed anything to induce plaintiff to accept them, and all the allegations in the complaint of fraud in fact on defendant's part are untrue. The plaintiff took the notes without defendants' indorsement, in reliance on Farnham's property statement.

As a conclusion of law the court found the plaintiff not entitled to recover, and ordered judgment for defendants, the ground of decision being (as stated in the opinion before mentioned) that as plaintiff had made actual fraud the basis of its action, and the fraud not being proved, the plaintiff could not recover even if a breach of contract were shown, citing *De Graw* v. *Elmore,* 50 N. Y. 1; *Ross* v. *Mather,* 51 N. Y. 108; *Cochrane* v. *Halsey,* 25 Minn. 52, 61. A new trial was refused and the plaintiff appealed.

*H. D. Stocker,* for appellant.

The action is *ex contractu.* The defendants agreed to sell to no one who was not of known responsibility, etc., and it was a breach of the contract and gross negligence, equivalent to fraud, (*French* v. *Buff,* 4 Keyes, 108,) for them to sell to Farnham without making that reasonable inquiry which, as the court finds, would have informed them of his insolvency. Story on Agency, §§ 183, 185, 186; *Van Alen* v. *Vanderpool,* 6 John. 69; *Clark* v. *Van Northwick,* 1 Pick. 343; *Payne* v. *Potter,* 9 Iowa, 549. The mere obtaining of a property statement from Farnham did not release them from responsibility. *Robinson Machine Works* v. *Vorse,* 52 Iowa, 207.

Conceding that where an action is founded on actual fraud *alone,* proof of merely constructive fraud is not sufficient for recovery, that is not this case. Here the allegations of actual fraud may be stricken out, and a good cause of action on contract will remain.

*C. H. Benedict,* for respondent.

BERRY, J. As we construe the contract between the parties to this action, the defendants, by the 5th article, agree to indorse their guaranty upon every machine note turned over to plaintiff which they have taken from any vendee of a machine whose responsibility, reputation and property condition are not such as the article specifies, and who has not executed the property statement therein mentioned. It is for the plaintiff, at the time when a note is being turned over to it, to ascertain and determine for itself whether the facts in regard to a particular note are such as to entitle it to require the guaranty, and whether it will require one or not. If it determine not to insist on one, that is the end of its right to do so *under the contract.* If the defendants guaranty a note, their liability is upon the guaranty. If the plaintiff accepts a note without a guaranty, then the measure of defendants' *contract* liability is exclusively fixed by the 23-per-cent. clause of the 6th article, which applies to all uncollectible unguarantied notes, whether the maker was solvent when they were made, or not. This clause, being a special provision for a particular case, controls any general provisions, like that of article 13, the words of which might otherwise embrace a liability upon the part of defendants for the failure spoken of in article 5.

From this our construction it follows that as respects a note accepted by plaintiff without a guaranty, the plaintiff's exclusive remedy *ex contractu,*—that is to say, upon the contract,—must be sought under the 23-per-cent. clause of article 6. If, instead of pursuing this remedy, the plaintiff seeks to charge the defendants for fraud in taking and turning over an unguarantied note to it, and in the representations and inducements by which its acceptance of the same was accomplished, that remedy is not upon the contract—that is, *ex contractu*—but is outside of the contract, and for fraud, and, therefore, *ex . delicto.* The remedy sought in the present action is of the latter character, and hence the action was properly held by the trial court to be purely *ex delicto.*

The learned judge who tried the case below appears to have been of opinion that, because the action was in form *ex delicto,* the plaintiff, for that reason, could not recover as in an action *ex contractu,*

even if, by rejecting a portion of the pleadings, enough would remain to constitute a statement of a cause of action *ex contractu*. To this opinion we are not prepared to assent. But in this case, upon the construction which we have given to the contract, the pleadings did not embrace a statement of a cause of action *ex contractu*, that is, a cause of action under the 23-per-cent. clause of article 6. Indeed, the plaintiff expressly disclaims any such state of the pleadings. The case is then one in which the action is purely and exclusively *ex delicto*—no cause of action other than one of that description being stated in the pleadings, and no relief except such as is appropriate to such an action being embraced within the issues. The court below having found that the plaintiff had failed to establish its cause of action *ex delicto*, judgment was properly ordered for defendants.

Order affirmed.