IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

### MARCH TERM, 1872, AT ST. LOUIS.

---

EDWIN CURD, Respondent, *v.* H. C. LACKLAND, Appellant.

1. *Attachment, sale under—Notice by handbills — Purchaser at sale.*—Notice of a sale under attachment, given merely by handbills, in a county where a newspaper is published, is in law no notice at all. Where a stranger purchases for a good and adequate consideration, in ignorance of this irregularity, and receives a deed good upon its face, the sale should be received as valid, notwithstanding the sheriff's neglect in regard to the notice; and such a sale might sustain a link in a chain of title, even if the purchase were made by the execution-plaintiff, in favor of his innocent grantees. But it can not be held to give him such an interest as to entitle him to relief in equity.

2. *Sales, fraudulent—Gross inadequacy of price—Fraudulent circumstances.*—When a sale is attacked as fraudulent, gross inadequacy of price is one of the badges of fraud, and becomes controlling when coupled with other circumstances tending to show fraud.

### *Appeal from Sixth District Court.*

*H. C. Hayden* and *H. C. Lackland*, for appellant.

I. When a plaintiff in the execution buys property under his own judgment, he takes with notice of all defects and irregularities, and they become fraudulent as to him, and his deed can be attacked in a collateral proceeding. This is the rule in equity.

(Gott v. Powell, 41 Mo. 416; Hann. & St. Jo. R.R. Co. v. Brown, 43 Mo. 294; Young v. Bircher, 31 Mo. 136; Trigg v. Ross, 35 Mo. 165, 168; Weston v. Clark, 37 Mo. 568; Dickerman v. Burgess, 20 Ill. 266, 279; 11 Ill. 523–4; Woodruff v. Hoard, 9 Ind. 186; Pettingill v. Moss, 3 Minn. 223; Russell v. Dyer, 40 N. H. 173, 185; Boyd v. Ellis, 11 Iowa, 98, 102.)

II. The deed itself shows on its face that no legal notice of the sale was given. It recites that the advertisement was by six "handbills." The law in force at the time required the advertisement to be made by newspaper. It was admitted and proved that a newspaper was published at the time in the county. (R. C. 1855, p. 746, § 45; Sess. Acts 1862–3, p. 164; Sess. Acts 1863–4, p. 466.)

*J. W. Boulware* and *C. H. Harden*, for respondent.

I. The judgment at most is only voidable. In that case the defendant in the judgment, J. R. Collier, has the right in a direct proceeding for that purpose to have the same set aside; but even if it should be set aside upon his application in a direct proceeding, the title to the land sold under it would not be affected; the purchaser would most certainly hold the land. (Montgomery v. Farley, 5 Mo. 233; Perryman v. The State, 8 Mo. 208; Jackson v. Rosevelt, 18 Johns. 97; Jackson v. Bartlett, 8 Johns. 361; Jackson v. Delaney, 18 Johns. 536; McNair v. Biddle, 8 Mo. 257.) These authorities fully settle the doctrine that judgments merely voidable cannot be questioned in a collateral proceeding, and also that "when the court had jurisdiction over the subject-matter, and the defendant had notice of the proceedings against him, he is bound by them. However irregular or erroneous, the judgment is conclusive on all parties and privies thereto in any collateral proceeding, and the rights and titles acquired by virtue of an execution issued on such judgment will be protected."

II. A departure from the law in advertising does not vitiate the sale unless such departure was accompanied with fraud, and then the title of the purchaser is not affected unless he can be connected with the fraud of the officer. (Wilber v. Cox, 6 Mo. 110; Lawrence v. Spea, 2 Bibb, 401; Draper v. Bryson, 17 Mo. 71.)

Bliss, Judge, delivered the opinion of the court.

The plaintiff claims 152 acres of land in Audrain county, under one James R. Collier, by virtue of an attachment, judgment and sheriff's deed. The defendant claims the same land by virtue of a deed from the administrator of one Samuel B. Dickinson. The paper title was in Dickinson, but the plaintiff claims that there was a resulting trust in Collier available to his creditors, arising from the fact that the land belonged to him, but was fraudulently conveyed to Dickinson to place it beyond their reach. The sale and deed under the attachment proceedings were prior to the administrator's sale, and the object of this proceeding is to set aside the last sale and deed and vest the property in the plaintiff.

We must, from the evidence, consider the charges of fraud as fully sustained, that Dickinson held the property in trust for Collier, and that the interest of the latter could be sold upon execution. The questions which chiefly call for consideration pertain to the attachment proceedings and to the sale under them In this proceeding various irregularities are charged, which, it is claimed, render the sale to the plaintiff of no effect; but it does not become necessary to speak in detail of them, as they are not such as to render the judgment void. The court had jurisdiction of the subject-matter and of the person of the defendant, and its errors must be very radical to authorize us in a collateral proceeding to treat its proceeding as a nullity. But the sale itself is attacked, and the record shows that a regular weekly newspaper was published at the time in Mexico in said county, but that the sheriff, instead of advertising the sale in said paper, gave the notice by handbills, which he could only do in case no newspaper was printed in the county. The deed recites this irregular notice, and the fact is not disputed, but the purchaser claims that the sale is not thereby rendered invalid, and even that it would be good if there had been no notice at all. We must treat the notice as though none were given, and this presents the question whether such omission will so invalidate a sale that no title will pass. In many of the old States such an omission is treated as fatal.

(Benson v. Smith, 42 Me. 414; Den *ex dem.* Todd v. Phill-hower, 4 Zabr. 796.) But this court, in Draper v. Bryson, 17 Mo. 71, adopted the doctrine maintained in the courts of Kentucky, that a purchaser at sheriff's sale should not be affected by an irregularity in the notice unless he participated in it, or the departure was for some fraudulent purpose. This case does not seem quite consistent in principle with Tanner v. Stine, 18 Mo. 586, where the irregularity was of a different character, yet I must consider the doctrine a sound one. When a stranger purchases for a good and adequate consideration, in ignorance of the irregularity, and receives a deed good upon its face, the sale should be treated as valid notwithstanding the sheriff's neglect in regard to the notice. He is covered by the shield which in so many cases the law extends over innocent purchasers. He stands in a position analogous to that of an innocent purchaser upon execution sale under an erroneous judgment which is subsequently reversed, who is protected notwithstanding the reversal. But can the present plaintiff avail himself of this protection? I infer not, because of the gross inadequacy of the consideration paid, being only $5, and also from the fact that he was the plaintiff in the action. When a sale is attacked as fraudulent, gross inadequacy of price is one of the badges of fraud, and becomes controlling when coupled with other circumstances tending to show the fraud. (Tiernan v. Wilson, 6 Johns. Ch. 441; Howell v. Baker, 4 Johns. Ch. 118.)

Although no actual fraud is charged in neglecting the legal notice, yet the injury a party would receive if the sale were set aside and his equitable right to protection would depend very much upon the consideration paid. And as a purchaser at his own sale, the plaintiff must be considered as having bought with notice of all its irregularities. The sale was his act, and, if made in plain violation of law, it could clothe him with no equity. The general principle is more often applied to regular sales upon erroneous and reversed judgments, and although in such sales a stranger is protected, yet neither he who obtained the judgment nor his attorney can claim such protection, but must restore whatever has been purchased. (Young v. Bircher, 31 Mo. 136; Gott v. Pow-

Curd v. Lackland.

ell, 41 Mo. 416; Hann. & St. Jo. R.R. v. Brewer, 43 Mo. 294.) It is urged with some plausibility that this error cannot be considered collaterally. As we have seen, the errors in procuring the judgment will not be regarded, except in a direct proceeding to reverse it. But the execution sale is not reviewable upon error or appeal, as it has not been sanctioned by a judgment. Its legality is therefore still open to inquiry without violating the principle that a judgment concludes the parties until reversed. This is an equitable proceeding to declare a trust in favor of the plaintiff, and his right is founded upon his purchase. Such purchase is directly charged and must be found, or he has no equity. But the proceedings in the sale were not according to law. A most important requirement was wholly omitted, and by his procurement. An execution sale without notice is a grave departure from the requirement of law, and to sustain it would open a door for fraud. It is going far to sustain it in favor of strangers who have acted in good faith, but it should not be upheld in favor of one who is responsible for the error, especially when he founds an equitable claim upon it.

It is unnecessary to say that the sale was void. It is held, as we have seen, good in favor of strangers, and it might sustain a link in a chain of title, even if the purchase were made by the execution-plaintiff, when he is not applying to the court for relief. But we only hold that it should not be held to give *him* such an interest as to entitle him to relief.

Counsel have discussed at length the question whether the defendant, at the administrator's sale, purchased with notice of the previous sale to the plaintiff. The notice was sufficient, and counsel mistake when they claim that the notice required by the common law in equity proceedings is the same as the "actual notice" spoken of in the registration act. To protect subsequent purchasers of land when the prior deed has not been recorded, such deed is declared void unless the latter purchaser has "actual notice" of its existence. Under this statute it is held that it is not sufficient for the purchaser to have knowledge of facts that would put him upon inquiry merely, but something more is required.

The authorities cited when this statute was under consideration do not apply to equity proceedings like the one at bar.

Under the view we have taken, the judgment below must be reversed and the petition dismissed.